## GRANGER *v.* RIGGS.

A contract provided for the lease of property for two years, at a rental of a fixed sum payable in two installments, one due on the execution of the lease, the other on the first day of the second year of the lease. The lessee had the option to purchase the property at any time before the expiration of the lease, on stated terms. It was provided that if a sale was made before the date fixed for the payment of the second installment of rent, that installment should not be paid. The lessee exercised the option to purchase five days after the installment was due, and a deed to the property was delivered forty-six days thereafter. In the negotiations of sale nothing was said concerning this installment of rent, and no reference to it was made in the deed. No demand for it was made until long after the deed was delivered, and suit was not brought until more than a year had elapsed after the sale. The court directed a verdict for forty-six days' rent. *Held,* that this was error. The plaintiff was, under the contract, entitled to recover the full amount of the installment, with interest from the date it was due, and was not estopped from claiming payment of the same.

Argued May 7, — Decided June 1, 1903.

Complaint. Before Judge Fite. Bartow superior court. January 17, 1091.

*John W. Akin,* for plaintiff.     *James M. Neel,* for defendant.

COBB, J. On July 13, 1900, Granger brought suit against Riggs, claiming an indebtedness of $400, besides interest from March 1, 1899. Under a contract, dated March 10, 1898, in which Granger leased to Riggs an ice plant and other property connected there-

with, in Cartersville, Georgia, from March 1, 1898, to March 1, 1900, Riggs agreed "to pay as rental for the ice plant and other property aforesaid the sum of eight hundred dollars ($800.00), payable in two installments of $400.00 each, one on the execution and delivery of this lease, and the other on March 1, 1899, provided, however, should said property be sold as hereinafter provided, or rendered unfit for use for the purpose of manufacturing ice through cause while in possession as aforesaid of A. O. Granger prior to March 1, 1899, then the said lease shall terminate and the second installment of rent due hereunder shall not be paid." The contract further provided: "In consideration of the foregoing agreements the said A. O. Granger hereby agrees to sell to L. C. Riggs, trustee, at any time prior to the expiration of this lease, the ice plant, machinery, lands, buildings, and all the property heretofore owned by the Ice Company in Cartersville, Georgia, for three thousand dollars ($3,000.00), or all property above described, excepting the land and buildings, for twenty-five hundred dollars ($2.500.00), on the following terms: one half on delivery of deed and abstract showing merchantable title in the grantor in said deed, and the balance in one year, with six per cent. interest, secured by mortgage on said property. The said A. O. Granger reserves, however, the right to sell the above-described property to others than L. C. Riggs, trustee, on the following conditions: Should the said A. O. Granger, at any time prior to March 1, 1900, find a suitable purchaser as aforesaid, he shall, before selling, notify the said L. C. Riggs, trustee, of his intention to sell, and thereupon the said L. C. Riggs, trustee, shall have twenty-four hours in which to elect to purchase the property at the price and on the terms aforesaid, and should the said L. C. Riggs, trustee, not elect to purchase before the expiration of twenty-four hours from the notice as aforesaid, then the said A. O. Granger shall have the right to sell the property to parties who shall remove the machinery of the ice plant to a point as far distant from Chattanooga, Rome, and Atlanta as Cartersville is distant from each of these places respectively, and the said A. O. Granger agrees not to sell the ice plant before March 1, 1900, except for the purpose of removal as aforesaid. In the event of the sale of the property to L. C. Riggs, trustee, or any other person, before March 1, 1899, this lease shall terminate, and the said L. C. Riggs, trustee, shall not be held liable for the installment of rent due on March 1, 1899."

It was alleged that the property was not sold before March 1, 1899, but that after that date, to wit, April 21, 1899, defendant exercised his option and bought the property. It was also alleged that the property was not rendered unfit for use for the purpose of manufacturing ice at any time before the sale. The suit was for the installment of rent which fell due on March 1, 1899. The answer of the defendant set up that on March 5, 1899, the authorized agent of plaintiff gave defendant notice that plaintiff would sell the property to others unless he exercised his option to purchase on the terms prescribed in the contract; that on March 6, 1899, defendant exercised this option by notifying the agent of plaintiff that he would purchase; that, owing to plaintiff's absence in a foreign country, the deed was not delivered until April 21, 1899; and defendant claims that if he is liable at all for rent after March 1, 1899, it is only from March 1 to March 6. The answer further set up that the relation of landlord and tenant ceased on March 6; that the lease was merged in the deed of April 21, and plaintiff's right to demand rent became extinct on March 6. It was alleged that nothing was said during the negotiations of sale about the installment of rent due on March 1, 1899, that no reference was made in the deed to the subject of rent, and that no claim of rent was made by plaintiff until long after the deed was delivered. The plaintiff's silence and the deed are pleaded as an estoppel. The deed, a copy of which is exhibited to the answer, is an ordinary deed of bargain and sale, with the clause of express warranty omitted. At the trial the facts alleged in the pleadings were made to appear by evidence. The court directed a verdict for the plaintiff for $55.55, being the rent due from March 1, 1899, to April 21, 1899. The plaintiff excepted to this ruling, claiming that he was entitled to recover the full sum sued for.

The second installment of rent was due March 1, 1899. The contract in terms dealt with the subject of what should relieve the defendant from payment. Under the contract only two things would defeat the plaintiff's right to demand the payment of the full amount of the installment — first, a sale of the property before March 1, 1899, and, second, the property becoming unfit for the manufacture of ice. It is not claimed that either of these contingencies has happened. Under the contract the plaintiff was entitled to demand $800 for two years rent of the property, unless a sale

was had prior to March 1, 1899. If a sale was had after that date, the whole $800 was to be paid, and it was to.be presumed that the defendant, by delaying the right to exercise his option until after the date fixed, would understand that the purchase-price of the property was increased by a sum representing the rental from the date of the sale until the termination of the lease. If defendant desired to avoid payment of the second installment of rent, he should have taken care to exercise the option before that installment was due. If this installment had been paid on March 1, 1899, we do not suppose that any one would contend that a subsequent election to purchase would have given the defendant the right to recover it. If he could not recover it, he has no right to refuse to pay it, when nothing has occurred which would at all indicate that it was the intention of the parties at the time of the sale that the plaintiff's accrued right under the contract was to be surrendered. Even if the general rule is that a sale of leased premises terminates the lease and extinguishes the right to collect future rent, such a rule has no application to a case where the express stipulation in the contract is to the contrary. Even if the contract was illegal because the lease was made for the purpose of closing up the ice plant and was in restraint of trade, and even if this illegality would constitute a good defense to a suit on the contract, it can not be relied on in this case, because such a defense is not set up in the pleadings. Under the evidence the plaintiff was entitled to recover the full amount sued for, and the court erred in directing a verdict for a less sum. *Judgment reversed. By five Justices.*